IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

DARYL MASON,                              )
                                          )
                Plaintiff,                )
                                          )
v.                                        )    Case No. CIV-20-150-RAW-KEW
                                          )
COMMISSIONER OF THE SOCIAL                )
SECURITY ADMINISTRATION,                  )
                                          )
                Defendant.                )

## REPORT AND RECOMMENDATION

Plaintiff Daryl Mason (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 43 years old at the time of the ALJ's decision. Claimant completed his high school education and two years of college. Claimant has worked in the past as a kitchen helper, poultry hanger, poultry boner, industrial truck operator, material

handler, and telephone solicitor.  Claimant alleges an inability to work beginning March 27, 2018 due to limitations resulting from affective and anxiety disorders.

## Procedural History

On June 26, 2018, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act.  Claimant's application was denied initially and upon reconsideration.  On June 20, 2019, Administrative Law Judge ("ALJ") Doug Gabbard, II conducted an administrative hearing in McAlester, Oklahoma.  On July 10, 2019, the ALJ issued an unfavorable decision.  On March 26, 2020, the Appeals Council denied review.  As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation.  He determined that while Claimant suffered from severe impairments, he retained the RFC to perform a full range of work at all exertional levels.

## Error Alleged for Review

4

Claimant asserts the ALJ erred in improperly discounting the mental medical evidence such that he improperly weighed the opinions of Claimant's treating physician.

### Consideration of the Medical Evidence

In his decision, the ALJ determined Claimant suffered from the severe impairments of depression, bipolar, anxiety, and obsessive disorders; substance addiction disorder in remission; and emphysema. (Tr. 12). The ALJ concluded that Claimant retained the RFC to perform a full range of work at all exertional levels with the non-exertional limitations of unskilled work, which required performing only one or two step tasks or where the job only requires a reasoning level of one; interpersonal contact with supervisors and co-workers which is incidental to the work performed, e.g. assembly work; only occasional, gradually-introduced workplace changes; no contact with the general public; and avoiding even moderate exposure to extreme temperatures, humidity, dust, gases, fumes, odors and other pulmonary irritants. (Tr. 14).

After consulting with a vocational expert, the ALJ concluded Claimant could perform the representative jobs of Industrial Sweeper Cleaner and Conveyor Feeder Off Bearer, both of which were

found to exist in sufficient numbers in the national economy. (Tr. 19). As a result, the ALJ found Claimant was not disabled from March 27, 2018 through the date of the decision. (Tr. 20).

Claimant contends the ALJ "understated" the portions of the record that supported a finding of mental disability while overstating evidence of his improvement. Claimant takes issue with the ALJ's repeated finding that he was "doing better" derived from the medical record, concluding that the phrase was "likely" used only to indicate Claimant was no longer using methamphetamine, which he was admonished to do before his treatment for his mental conditions would be effective.

The ALJ noted that Claimant had been in prison for drugs. He testified he could not work because of low back pain and mental problems which caused his mind to race, making it difficult for him to focus and making him paranoid. Claimant also stated he had thyroid disease which was "stable." He smoked a pack of cigarettes a day, which was a reduction in his smoking, but he still smoked marijuana daily. He testified that he was waiting on his medical marijuana card in the mail. He denied presently using methamphetamine but the ALJ noted that Claimant was rocking back and forth and jerking a lot during his testimony at the hearing.

6

(Tr. 15).

Claimant ignores the longitudinal record and the progression made by him over time, instead choosing to focus on individual records and the waxing and waning of his mental condition during treatment. For example, June 15, 2018, the record indicated Claimant was "doing better", smoked marijuana with signs of drug withdrawal, continued with hallucinations and paranoia, severe depression and anxiety. He was alert, oriented x 4, intact memory, psychomotor hyperactivity with tremors, depressed, anxious, irritable, labile, congruent, paranoia better, no hallucinations (although contradicted earlier in the record), no suicidal/homicidal ideations, thought processes logical, coherent, and goal oriented, judgment, impulse control, abstraction were poor and insight was fair. (Tr. 410).

On August 2, 2018, the medical record indicates Claimant was "doing worse", sleeping too much, feeling tired, hallucinating, paranoid, depressed, anxious, and "much more manicky". It also showed Claimant was alert, aware without fluctuations, oriented x 4, intact memory, rapid speech with normal rhythm, average intelligence, psychomotor hyperactivity with tremors, depressed and anxious affect, irritable, labile, congruent, no

hallucinations (although stating he experienced such earlier in the report), no suicidal or homicidal ideations, thought processes very circumstantial and tangential, judgment, impulse control, abstraction poor and insight fair. Claimant was still using opioids. (Tr. 404).

The record also indicated Claimant's conditions were better or improving in several of the same areas. In her treatment notes, Dr. Theresa Farrow noted improvements in his anxiety and depression across the record. (Tr. 406, 408, 410, 513, 517, 520, 522, 721, 723, 725, 727, 731, 733, 735, 737, 741, 743, 745, 747, 749, 753, 759, 761, 764, 766). His sleep also improved. (Tr. 406, 408, 410, 513, 517, 520, 522, 721, 723, 725, 727, 733, 735, 737, 739, 741, 743, 745, 747, 749, 753, 759, 761, 764, 766). Claimant felt less tired and lethargic. (Tr. 513, 753, 759, 761, 764, 766). Claimant noted fewer problems with attention and concentration. (Tr. 731, 733, 735). Overall, Claimant felt "pretty good." (Tr. 737). Claimant's judgment, impulse control, and abstraction improved. (Tr. 753, 759, 761).

Dr. Farrow repeatedly begins her treatment reports with the statement that "Pt. doing better." (Tr. 721, 723, 725, 731, 737, 739, 741, 743, 745, 747, 749, 751). Despite Claimant

8

protestations to the contrary, these references clearly do not merely refer to Claimant's drug use.  Rather, Dr. Farrow is stating what is obvious from her reporting – Claimant's overall condition and symptomology had improved.

Moreover, the ALJ stated that he considered the entire medical record "even when not explicitly discussed."  He concluded the objective record and Claimant's activities of daily living established a greater sustained capacity than Claimant alleged. (Tr. 18).  Where the ALJ states that he considered all of evidence of record, he will be taken "at [his] word."  Wall v. Astrue, 561 F.3d 1048, 1070 (10th Cir. 2009) quoting Flaherty v. Astrue, 515 F.3d 1067, 1071 (10th Cir. 2007).  This Court finds that the "'ALJ's discussion of the evidence and his reasons for his conclusions' demonstrate that he adequately considered Claimant's alleged impairments."  Id.  No error is found in the ALJ's recitation and consideration of the medical record.

### Consideration of Medical Opinion Evidence

Claimant also asserts that the ALJ inadequately considered the opinion evidence offered by Dr. Farrow.  Because Claimant filed his claim after March 27, 2017, the medical opinion evidence in the case is subject to evaluation pursuant to 20 C.F.R. §§

404.1520c, 416.920c.  Under the revised regulations, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, he must "articulate" in his decision "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record" by considering a list of factors.  20 C.F.R. §§ 404.1520c(b),  416.920c(b).  The  factors  include:  (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The  most  important  factors  are  supportability  and consistency,  and  the  ALJ  must  explain  how  both  factors  were considered.  *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Generally, the ALJ is not required to explain how the other factors were considered. Id. However, if the ALJ finds "that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [he] will articulate how [he] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5)[.]" 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

An ALJ continues to have the duty to evaluate every medical opinion in the record regardless of its source. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). He may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." Hardman v. Barnhart, 362 F.3d 676, 681 (10th Cir. 2004); see also Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007) (finding an ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability").

Dr. Farrow offered several opinions in the medical record. On July 13, 2017, Dr. Farrow authored a brief "to whom it may concern" letter wherein she set out her diagnosis of Claimant's

various conditions and then concludes "[h]e is unable to work at this time.  Please help him in any way that is possible." (Tr. 350).  This letter contains no functional analysis and certainly invades the province of Defendant's reserved findings.  Indeed, it contains no information which can be measured for supportability.  Although the ALJ found this opinion to be "partially persuasive", he did so because Claimant was not compliant with his medical treatment and never consistently stopped using illegal drugs.  (Tr. 16).  While this finding is supported by the record, it is curious that the ALJ found the opinion that Claimant could not work "partially persuasive" since Dr. Farrow did not note any findings in the letter, including that Claimant was non-compliant or that he was still using drugs.

On June 3, 2018, Dr. Farrow completed a medical source statement.  She estimated that Claimant would miss three or more days of work per month due to depression, anxiety, panic attacks, paranoia, hallucinations, and attention and concentration problems.  (Tr. 394).  Dr. Farrow found Claimant to be limited in virtually every functional area set out on the work requirements form except he could understand, remember, and carry out simple instructions in a routine work setting and could make simple work-

related decisions in a routine work setting.    (Tr. 395-400).

The ALJ gave this opinion "little if any weight" because it was inconsistent with Dr. Farrow's treatment records and other medical evidence.    (Tr. 17).    He also correctly noted that Dr. Farrow stated in a cover letter that she would not support someone's claim to disability benefits so long as they are still using drugs or alcohol.    Yet, she supported Claimant's disability claim despite his continued use of illicit drugs.    Id.    This Court agrees with the ALJ that Dr. Farrow's progressive treatment records indicate improvement in Claimant's conditions which brings the supportability of her findings into question.    Additionally, Claimant's continued illicit drug use and the admitted effect upon Claimant's treatment cannot be ignored.

On July 18, 2018, Dr. Farrow authored another letter stating Claimant was unable to work.    Again, little analytical information is provided by Dr. Farrow to allow evaluation for supportability. (Tr. 401).

The ALJ give this opinion "little, if any" weight as well due to the lack of consistency with Dr. Farrow's treatment notes and Claimant's continued drug use.    (Tr. 17).    Again, the limited information contained in the letter renders it of little value and

13

shades the opinion it does give as a conclusion without the required support.

On July 25, 2018, Dr. Farrow completed another medical source statement. She noted severe depression, anxiety, panic attacks, hallucinations, and paranoia which would require Claimant to miss more than three days of work per month. (Tr. 805). She noted he had been attending therapy and taking his medication regularly such that "[h]e is slowly getting better." (tr. 806). Dr. Farrow also found Claimant to be functionally limited in numerous cited work areas. (Tr. 808-13).

The ALJ gave this opinion "little if any" weight for the same reasons of supportability. (Tr. 17). This Court concurs in the analysis.

### Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any

14

objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 14th day of September, 2021.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE